Good morning, your honors. May it please the court. My name is Linda Kornfeld, representing Plaintiff and Appellant H.T. Seattle. I'd like to reserve four minutes. All right. Thank you. Before the court today are three issues. We have a motion for certification to the Washington Supreme Court. We have appealed the district court's grant of a 12B6 motion to dismiss and we have appealed the district court's denial of our 59E motion. I plan to start with the motion for certification, unless the court would like me to start elsewhere. Can you start with the coverage issue? The coverage issue? Yes. The loss for the physical damage issue. Yes, your honor. Let me start my presentation by making a foundational statement. It may not surprise you to know that this is not the first circuit that has heard a COVID business interruption case. There are many courts around the country that have heard these cases and decided them. Some of those courts have treated these cases as if they're a one-size-fits-all proposition regarding whether there is physical loss or damage to property. They have. They've addressed them, although not in a precise context, in Hill and Stout. Seattle Tunnel, yes. When I read the language in Hill and Stout, it says physical loss of property means a property that has been physically destroyed. Not true here, right? No physical destruction. We haven't been physically destroyed, your honor. Or that one is deprived of in that the property is no longer physically in their possession. That's a quote from Hill and Stout. And so if that's what physical loss of property means, do you agree that you don't qualify under that statement? Yes, your honor, but we don't agree that that's the ultimate conclusion of Hill and Stout. Hill and Stout, we believe was clarified as to the standard in Seattle Tunnel. But in Hill and Stout, the court also said in multiple places, that loss of functionality can also be the standard. And if you lose functionality, which is the purpose of your business, if you lose it. Hill and Stout, even it could be the standard. Seattle Tunnel is a addressing claims that COVID caused physical loss to damage your property. Hill and Stout says the way we try to figure that out is this way. And I understand it arose from the governor's orders in that case, not necessarily from COVID being on the premises. But it doesn't that give us just I know courts around the country have had differing results in this, but I can't find any state Supreme Court decision, or any circuit court decision that finds coverage under circumstances like this. Is there one? Well, your honor, the Supreme Court in Vermont sent the case back for this issue to be decided. The issue of whether the actual presence of COVID is sufficient to trigger coverage is being presented the California Supreme Court has accepted cert. And so that issue is going to be dealt with by the California Supreme Court or California under California law. Hill and Stout was specific to say, we've only been presented here with a government orders case. And so we are not here today deciding whether there's coverage. But if you think that the certification into California case has any relevance, and I'm not sure that it does, that shouldn't maybe we should just wait and see how the California Supreme Court decides it. But if we do, and it decides it against you, it seems to me you're now saying that would be powerful evidence of Washington law. Your honor, I think it's important that the Cali that the Ninth Circuit in California has certified that issue to Cal to the California Supreme Court, I believe the Washington Supreme Court, the day that it ruled with respect to Hill and Stout back in August last year, would have ruled further if the issue of actual presence was before it very complimentary of Judge Rothstein's decision in Wynn. They went out of their way to say, I used to be a state's court Supreme Court justice. We didn't go out of our way to say nice things about federal judges, but they did. They said, we find her analysis incisive. And I understand the factual context is slightly different, but don't we have a really good predictor here in the language of their decision? Your honor, I don't think we do because other places in the decision, for example, if you look at page 221, they say that, um, had Hill and Stout alleged a physical loss of functionality because of the imminent danger to property, danger to property, imminent danger to property, to property, danger to property, correct. Not danger to people who might come in and get COVID, but danger to the property. Correct. Your honor, uh, contamination with a problematic substance. We allege imminent danger to the property, the airspace in the property. Second point, because I wanted this. I'm glad Judge Wynn directed you to coverage because the Hill and Stout then went on to look at a policy provision that excluded coverage for damage caused by viruses. Yes, your honor. We agree COVID is a virus. Yes, your honor. Why is that exclusion bar coverage in your case? That's a different exclusion, your honor. That was, I know it doesn't read exactly the same, but your policy does have an exclusion for contamination caused by viruses, doesn't it? Yes, your honor. And COVID is a virus. COVID is a virus. So you agree that you don't have coverage for contamination caused by COVID? I do not. Can I explain why? Sure. Your honor, if you look at EOR 145, which is the definition section of the policy, of the Zerk Edge policy. Yep. It, um, the, the contamination exclusion is on a different page. It refers to contamination as a defined term. And then you go to page 145 to find the definition of contamination right under the definition of contamination is the definition of contaminant. I would pose that as a matter of common sense. And if you read dictionary definitions and talk to experts, the presence of contamination, the event of contamination cannot happen with the presence of a contaminant. It cannot happen without the presence of a contaminant, can it? Isn't contamination always caused by contaminants? Yes, your honor. And, and one of the contaminants that doesn't, that's not included is a virus. Correct. And so, so help me out. If you can't claim damage from contamination caused by a virus, how, how are you covered by this policy? So let me read these words together. It's, it's common sense that there can be no can, there can be no contamination without a contaminant present. So the definition of contaminant in the policy is important for understanding what contamination means in the policy. And both definitions use a number of words. And I agree with you that the contamination definition includes the word virus and the contaminant definition does not. But you got to start with the contaminant definition to understand the purview of contamination. So what you're saying is the contaminant definition means that you are covered for contamination by a virus, even though the policy says you're not covered for contamination by a virus. So let me read to you, your honor. I've got it in front of me. You don't need to read it to me. But is, I'm asking you, isn't that the upshot of your argument?  So contaminant is defined as any solid, liquid, gaseous, thermal, or other irritant pollutant or contaminant. And then it says including, but not limited to, and it gives examples. Those first few words are talking about traditional environmental contamination and they modify the words that follow them. The only way to give contamination and all the words that are used in the contamination definition meaning is that these words, any solid, liquid, gaseous, thermal, or irritant, traditional environmental contamination words also must modify the words in the contamination definition, which means whatever toxin or virus or any of the other terms may mean outside of the context of this policy that Zurich wrote here, they must be understood in the context of traditional environmental pollution. That's how the words read. Zurich in deposition, another case, its corporate designee admitted that you need the word contaminant to understand the term contamination. It's part of the contamination exclusion. I'm still completely mystified by your argument. I understand your physical damage argument may or may not be right. But if you're arguing that you have, you're arguing that you have coverage for contamination for the vibe, for this virus, which is expressly excluded from coverage for contamination. Your Honor, we are arguing that the term virus as used in this policy, in the context of these words, knowing that to have contamination, you need a contaminant and Zurich specifically defined contaminant in a way that creates, at best for Zurich, confusion. We think. I see. So what you're saying somehow is the term virus has to be. It is almost a misnomer because it doesn't fall within the traditional contaminants sort of list of what they are. Your Honor, yes, there are viruses that can exist in a contaminate in an environmental pollution context. You can have norovirus, which is released. That would mean the term virus is superfluous. It's not superfluous, Your Honor. It has meaning. It's just meaning in the context of traditional environmental pollutants. That context is created by the term, the definition of contaminant, which has to be considered when you're trying to understand the meaning and scope of the words that are used in the contamination definition. And in that context, we give meaning to virus. It's not traditional communicable diseases like coronavirus. It would be some sort of medical waste. It would be some sort of contaminant like norovirus, which is dispersed in dirty water, released into dirty water and creates disease. So if the contaminant definition said we include viruses, would you then, under your interpretation, COVID-19 would not be covered, would it? Again, Your Honor. Because it wouldn't be like the other types of contaminants that were listed. Your Honor, the answer is yes. And it's because of the words that Zurich chose. No other insurer that we've seen that has a contamination exclusion and has a definition for these two words has defined them differently and defined them in a way where they might conflict. The other policies that we've seen, for example, Factory Mutual, one of the biggest property insurers in the world, has a contamination exclusion. It defines contamination as the presence of a contaminant. And it sends you to the definition of contaminant to figure that out. I know those other folks are not arguing today, but I take it what you're saying is that we would be correct in that case, finding that the virus exclusion applied. Well, you again then have to look to the definition of contaminant to see the breadth of the term as defined in the policy. And again, the words any solid, liquid, gaseous, thermal or other irritant pollutant or contaminant modify all the words that follow. So they need, you know, every word needs to be given effect and they need to be read together to give effect to all the words. And so the introductory words to the contaminant definition, it's our view and we believe it's correct, have to modify what follows. Assuming we only get one certification to the Washington Supreme Court each day and that you aren't going to be hit. And just I'm not saying that's the way we're going to decide, but just start out there. Judge Rothstein says the great majority of cases around the country decided by lower federal courts, intermediate state courts, et cetera, come out the way she did. Is that a fair statement of the state of the law? Your Honor, there's no question that there are many courts around the country. This is on the physical damage issue, of course. That have ruled, that have granted motions or summary judgment. It is important to note that these cases are not one size fits all. And there are courts that have sort of adopted a one size fits all approach, but the policy language matters. But I think the problem is in this case, the state court in Hill and Stout already weighed in on what Judge Rothstein said. And they said in the opinion, while we must keep in mind any differences in government orders do not cause physical loss or damage to a property and therefore do not trigger coverage under similar policy language. That's a strong of a signal as to how they rule as I've ever really seen. So I just don't know why we need certification in this case. Your Honor, we are different here in Washington. We are different because the Washington Supreme Court has ruled now last year in two cases that are on point with respect to how you interpret this language in this state. And I think it's important that in Hill and Stout, the court in Hill and Stout was trying to put together a standard that recognized loss of functionality. Judge Rothstein rejected loss of functionality and recognized that you don't need physical alteration. Judge Rothstein said you need physical alteration. So in Hill and Stout, the Supreme Court did put together a standard that recognized you can have coverage for physical loss or damage if you have loss of functionality caused by a dangerous, invisible substance, the presence of that. Judge Rothstein said the presence of a dangerous, invisible substance can never cause coverage. So while Hill and Stout did acknowledge Judge Rothstein and make statements about what's happened around the country, it also, which most courts around the country and policyholders have been advocating for a loss of functionality standard where in a case like ours, there is actual presence or the risk of, which is a term in our policy, of the actual presence of a dangerous substance. Tell me why there's a loss of functionality here. That's what Hill and Stout directly addresses that loss of functionality issue and says, we mean loss of functionality. We mean that the property can't be used for its intended purpose. It says under loss of functionality as Hill and Stout's claim fails because there's no physical loss of functionality to the property. There's no allegation in this case that somehow COVID affected the physical ability of your property to do whatever you had it for. It made it very, you know, it made it dangerous for people to be out in public. So it seems to me Hill and Stout really does address your functionality argument. So your honor, the reason why these cases can't just all be decided as one is because what is the insured function? What, why did you buy the insurance? What function is it you're trying to protect is different for every business. How was your property rendered less functional by COVID? Your property was rendered less hospitable by COVID. It was rendered, people would decide not to come to it. But for those who came to your property, wasn't every bit of property there as functional as it was before? No, your honor, the purpose and function of, well, try to answer my question. Tell me what piece of your property wasn't as functional as it was before COVID. Your honor, let me let me try to answer it this way. Our property is a convention center hotel. It's not just a hotel where people come check in, go to the room and don't interact with anyone in that situation. The dangers there are very different from the point of our hotel is for people to come in the thousands, go to conventions, interact together, be in crowds, talking, drinking, speaking loudly. It's not the definition of functionality that Hill and Stout adopts. It talks about the function of property. The function of the property. Whether or not that property couldn't perform its function was because of physical loss or damage. And so I'm still having trouble figuring out why, if people were stupid enough to go out during the pandemic, your property lost any functionality. Your honor, there are properties that people could have gone to during the pandemic and did go to during the pandemic where the spread of the virus was not deadly. Had people come to our hotel for conventions, which is the whole point of our hotel, is to have conventions. Had they come to our hotel for a convention, it's near certain, certainly at the early time during the pandemic, that many people would have gotten sick. The virus would have been everywhere because it's spread through aerosols. Don't you argue really that this is a business interruption policy, not a physical loss or damage policy? I'm sorry? If you bought coverage for business interruption. Easy. But this is a policy that covers physical loss or damage. And I'm still I'm still looking for the physical loss or damage. And what you're saying is the physical loss or damage here is that nobody would come to our because there was covid. We couldn't operate because it was too dangerous, because the covid virus would have been everywhere and people would have died. It's not it's not an and that's what business interruption policies cover. This is a physical loss or damage policy. We had we when the virus and this is the issue that the Supreme Court has not addressed.  I think can I just short circuit this? I think what you're saying or shortcut, I think what you're saying is. That it is sort of fundamental to the virus when it's everywhere, that there is just per se loss of functionality because it's going to constantly be on surfaces, it's going to be in the air. And whether it's a good argument or not, the argument is, therefore, that. On a sort of big picture, fundamental basis means that that that that there is no effective functionality for our business, because our business requires people to be very close together in large numbers, absolute that correctly. Yes, your honor, and if that's a correct statement of the law, would Hill and Stout have come out differently? Not on the facts of Hill and Stout, your honor, because it's a dental office, there's they're breathing in each other's faces and all that sort of stuff. Doesn't it doesn't that office lose functionality just the same way yours would under this definition? Your honor, there are two prongs to this test as enunciated in Hill and Stout. And I Hill and Stout sort of goes back and forth. And it it says that Judge Rothstein got it right. And then it sort of backs off from Judge Rothstein. But I think the point of Hill and Stout is they apply to loss of functionality standard. But it's not just loss of functionality alone, because if it was Hill and Stout would have won. You need loss of functionality due to a dangerous condition at the property. And I believe. Thank you. You can wrap it up. We've taken you well over time. The dangerous condition. I want to make one quick point. I think what you're saying is I hate to put words in your mouth, but that Hill and Stout didn't really consider this issue, that you have to look at it broadly in terms of the sort of immense effect that COVID had for a place like your clients. And when you look at it broadly, the issue wasn't raised by Hill and Stout. And the level of infectious agent is so pervasive that you can't get down to minutia and say, well, it affected a desk. It affected a wall. It affected this. It affected the whole structure. Right. That's what you're saying. Yes, it would have been too dangerous to use our facility because COVID would have been everywhere and people would have gotten sick. Hill and Stout didn't allege that level of danger and the court didn't consider it there. Thank you, counsel. Good morning, your honors, and may it please the court. Lori Hepler for American Guarantee and Liability Insurance Company. It's a little hard to know where to begin because there are three independent grounds to affirm the judgment here. I would be on the other hand, the easiest affirmance is under the contamination  want to really push back hard on this notion that the court ought to try to marry two distinctly defined words in the policy when only one is used. Well, let me ask you about the contamination exclusion. I want to understand this. Let's assume that that the contamination exclusion reads the way you think it reads and therefore excludes coverage for contamination by a virus. Sure. Would they be entitled to coverage if there were physical damage? From that contamination. Your honor, no, they wouldn't. The whole point of the contamination exclusion is to foreclose coverage, even where such physical damage arguably exists. OK, that's what I'm asking. Sure. Because there is coverage for contamination. Yes, there are. No, no. There is specified coverage when contaminants, which are separately defined, for example, appear in land and water under certain circumstances. The policy actually uses that word to grant coverage. OK, so there's a grant of coverage for some sorts of contamination. No, for some sorts of contaminants, some sorts of contaminants. OK, yes, there's a grant of coverage for some sorts of contaminants. But those sorts, according to the policy, do not include virus. That's exactly it, your honor. Right. Yes. But if that virus somehow caused physical damage, I'm thinking of like the flesh eating virus. So we have a wood eating virus. Would there be coverage? No. Well, certainly not under this policy. And here's why. Because the physical loss or damage must occur to covered property. And you're talking about living property, which is. I'm talking about let's have a hotel and it's built out of wood and there's a virus that damages wood and it comes and it's on the property and it damages my wood. It seems to me it wouldn't be covered by the contamination clause because viruses are not covered. That's exactly it. But would it be covered by the physical loss clause? Well, you're asking whether it would constitute physical damage in the first place. I've just posited where there was physical damage. Sure. So, yes, but we have to have if there is if so, let me just make I want to understand if there is physical damage caused by whatever. It really doesn't matter whether or not it's a contaminant or not, does it? Well, it does, because the physical damage must be by a covered cause of loss. That's in the insuring. OK, so now I'm coming back. And so tell me the answer to this. If the physical damage is caused by a virus, which is not a covered cause of loss. Well, see all that, that's my problem. All that the policy says is that a virus that will not constitute the kind of thing that gives you contamination coverage. Well, let me back up. Contamination clauses, it says here's contaminants and here's contamination coverage. But there isn't any coverage for contamination caused by a virus. Your Honor, I think we have to really take these in distinct pieces. That's what I'm trying to do. Yeah. So I'm trying to figure out whether the virus exclusion would apply even if there were physical damage. Your position is that it would. Let me be clear. Well, the clear is yes or no.  Physical damage caused by a virus? No, it absolutely would not, because the policy only covers direct physical loss or damage from a covered cause of loss. That's baked into the original insuring clause. So the covered cause of loss in this case would be contamination, but there would be an exclusion from the. No, no, no, not at all. No, there is no covered cause of loss whatsoever in this case or in the hypo your crystal clear. There's no coverage for contamination out of it for a second. If if we concluded that virus, this virus caused physical loss or damage, OK, would it be covered by the policy? Absolutely not, because because virus is not a covered cause of loss. Your Honor, take it out of the take the take the exclusion out for a moment. So there's no contamination, no contamination exclusion, none at all. Not at all. You'd agree that if virus caused physical damage to property, it would be covered. Certainly not in this case. I'm not sure what hypo your honor is now posing. You can't change the hypos. I'm a hypo without the contamination. No, I get that. So what property are we talking about? Let's assume that the virus actually caused physical loss or damage. I don't care how. Let's assume that's what we conclude, consistent with what the one intermediate court in California concluded. So let's just assume that we believe that virus, this virus can cause physical loss or damage. And there is no contamination cause in my hypothetical policy. Then there is coverage, is there not? I don't it's very hard for me to understand the full hypo, your honor, because I don't understand. Let me just be very simple. If we conclude that contrary to the ruling below, the COVID-19 virus caused physical loss or damage to these to the insured's property. And we don't consider the contamination exclusion for a moment. Would there be coverage? I, I. But the answer has got to be yes, because physical loss or damage triggers coverage. Right, because we're assuming in the hypo there's no contamination exclusion. Your honor, I suppose so, but there is no basis on which this court could ever conclude from Hill and Stout that any viral. I just know we would come out differently than Hill and Stout. We would say, you know, I understand you think Hill and Stout controls. It wasn't. All I said was, if we concluded that this was physical loss or damage, I understand you protest mightily against that. If we're so stupid as to so conclude in your view. All right. And there's no contamination exclusion. Is there coverage? No. And here's the third independent ground that I would get to. There is a complete break of the causal chain. If you read these, both of these complaints, either one, there's no causal connection between this supposed and I'm going with your supposition that there's viral property damage. Let's assume that. All right. Completely counterfactual, but let's assume it. There is no causal connection to their claimed economic harm, and that causal connection is absolutely required by the policy. It's clear at page 726 of the record. And here's why. Did Judge Rothstein run that basis? No. But if you review these complaints, you will see that they allege rather candidly that what caused their economic harm is a combination of the travel restrictions and the consequent financial pressure that required them to limit their operations or even close the hotel. You can imagine a scenario in which not one viral particle ever entered this hotel. Their economic harm would be exactly the same. Exactly the same. I don't think you really answered the question. You sort of diverted to another theory. And the question was pretty simple. So let's forget the third reason. If you could just answer the previous question. If you imagine, as your honor posits, that there is some damage, physical damage to the property, physical damage to covered property, covered property caused by covid and what you're putting aside, because I want to get back to the contamination. And it doesn't have a contamination clause. It doesn't have this exception from the contamination clause for viruses. Then there is coverage here. Is there not? I just don't think so, your honor. I know you don't think so, because apparently you don't think there will ever be coverage. No, that's not the reason. This is this is this is not a trick question. Of course, there would be coverage if it caused physical damage to property. I just don't think so, your honor, because there is. But I hate your hypo. Yeah, I mean, that's not that's not the point. Your honor, let me ask you more generally. If there were physical damage to property here that caused the economic harm that caused the economic harm, even though Judge Ferguson asked you to put that aside, I'll throw that back in just so that you can see how you can assume that it caused the economic harm. If there were physical damage to property that caused the economic harm and there was no contamination clause, would this would there be coverage here? I up until the word here, I would have said there'd be coverage in that extraordinarily counterfactual hypo. Yes. OK, now this gets me to the question I've been trying to ask you now for 10 minutes and you've you're wonderful. You've warded off me. You've warded me off successfully up till now, but I'm not giving up. OK, now let's stick the contamination clause back in the all right in the thing. So what I'm trying to figure out, whether the definition of virus in that part of the policy merely accepts contamination caused by virus from coverage of the policy or whether we can it would accept physical loss caused by a virus from the policy. What's your position? It accepts every physical loss, damage and not only that, but loss of use resulting from them because that's spelled out in the exclusion. Right. But is it an exclusion from what say they're not claiming contamination? They're merely claiming physical damage to the property. That's why I'm having some difficulty here. So I understand if you're claiming contamination, they lose because there's a virus exception. But what if they're not claiming contamination? What if they're simply claiming physical damage to property? Does the exclusion in that part of the policy make any difference? Oh, absolutely. For among other reasons, it spells out that physical loss or damage caused by any of those things is excluded. Sure. That's the whole point of the exclusion. You can't. That's the whole point of it. Absolutely. We're not even talking about coverage, Your Honor, for this sort of contamination at large, by the way. Their complaints, if you read them, you don't even have to read them all that carefully. You can open almost any page and they allege that this supposed viral property damage is really an evanescent change on the surfaces of the property that temporarily poses damage and harm to people. They don't allege this damage even in their own complaints. So that's why it's, among other reasons, so difficult for me to to go with this both the original complaint and the proposed amended complaint. That's why it's a hypo. I'm asking a hypo so that I can then go back and try to understand the application of your position to the original complaint. You know, it's the way we try to figure out what the implications of your argument are. So I understand I haven't stated the facts of this case. Yeah. That's why it's called a hypo. Sure. But not just not the facts of the case, Your Honor, but that there are several factors in this contract to reach a resolution, to reach a decision of coverage. One of them. We understand all of that, but it's just there's a reluctance to answer a hypo and it's just coming through loud and clear to me. I get all the effective arguments that you're making, but it's just a problem solving technique about isolating certain points. And I did finally say yes, if we assume everything that Judge Hurwitz assumes counter to the record, then yes. But. Again, well, I don't need to repeat myself. I would I don't have all the time in the world. I would like to turn to this loss of functionality test in Hill and Stout for a minute, because that one sentence that H.T. Seattle and other policyholders are fond of about, you know, there could be a case where there's no physical alteration, but there is direct physical loss or damage. That one sentence was immediately followed by four paragraphs explaining the limits on such a concept. Is there a difference between the potential loss of functionality posed in Hill and Stout and the potential loss of functionality posed here? Absolutely, because Hill and Stout bedrock. You should say no to that, shouldn't you? You should. You should. Because the Washington Supreme Court said this isn't one of those cases where loss of functionality gives coverage. You think there's a difference? Well, they're sure. No, no. Yes. I misunderstood your honor. Not every question I ask you. I thought you were talking about the rules, not the application. All right. Because there's a vast difference. They they announce this idea, but then they proceed to say, but that is not what's going on here in Hill and Stout. It is not what's going on here in H.D. Seattle either, because the loss of functionality test in Hill and Stout demands a physical injury to the property to launch this loss of functionality test. And that is absolutely not what occurred here. Evanescent presence of a virus on surfaces that harms people and by their own lights goes away within hours or days is not physical injury to property within any reasonable understanding of that phrase. It's just not. So even under their allegations, we don't have the preface physical injury to property in the first place. We have all kinds of conclusory words in the complaints, but the facts aren't there to back it up. And I would go a little bit further. They actually allege that the one and only effective means of what they call remediation. This is paragraph 124 of the proposed amended complaint. The one and only possible means of remediating what was wrong at the hotel was to limit human access. All right. Thank you, counsel, for your argument.  Your Honor, just to confirm, I'd reserve four minutes. Actually, you were over time. I was over. I'm giving some back to you because the questioning has been particularly active. Yes. Okay. Thank you. I'd like to start with the last point that counsel made and counsel made the point that if the loss of functionality, the loss of functionality requires some physical impact to the premises in order for coverage to be triggered. And that's what we allege here. We allege loss of functionality. We couldn't use our premises for conferences because of the risk of and we have risk of language in our policy of extreme amounts of COVID, which is a dangerous, invisible substance in the air, making it too dangerous to use our premises. And this concept of an invisible substance making a facility too dangerous to use is not novel. It was embraced both in Hillenstout and Seattle Tunnel. In Seattle Tunnel, the court specifically said that loss of use due to a condition of the property is sufficient to trigger coverage. And then it's cited to the invisible substance cases where the courts found that it was too dangerous. The airspace was too dangerous to use because it was contaminated and that was enough to trigger coverage. Whether the dangerous substance dissipates on its own or you need to come in with a toolbox and do something about it. The question is whether you could use your space or it was too dangerous at any given time due to the existence of a an invisible, dangerous physical substance. Let me take one more shot with you at the contamination clause. Yes, I don't expect to be any more successful than I was going to say yes to whatever you said, but let me just try. The policy says it excludes. Physical loss or damage caused by contamination, correct? Yes. Right. We're on the same page so far. And then contamination and contaminants is defined to include any condition of property due to the actual presence of a virus. So if I took out all the rest of the words in that second paragraph, you would agree that that would exclude coverage for damage done by COVID, wouldn't you? Your Honor, if there were not a contaminant definition that put restrictions or. Right, right. No, I'm just so I want to understand your position. Your position is that the contaminant restriction. Somehow adds coverage back that was excluded by the general exclusion for contamination. I'm saying, Your Honor, that it gives context to understand what the word virus means on this page. Well, but see, the problem is there's a complete exclusion for contamination. Yes. Yes, Your Honor. And that's defined as defined in the policy. Yeah, not we're not worried about radioactive and other stuff. Yes. Or cleanups. There's a complete exclusion for contamination. And then the definition of contamination, contamination or contaminated includes any condition of property due to the actual presence of a number of things, including virus. And what you're saying is that while reading that might suggest to me that COVID is not covered because contaminants. The word contaminants doesn't include the word virus, the policy was meant to cover viruses. I mean, it's maybe a good argument. I just want to make sure I understand it. And thank you, Your Honor. And I just want to make clear my point, which is it's really the word contaminant and the prefatory language in the word contaminant. Any solid, liquid, gaseous, thermal or other irritant, pollutant or contaminant. Those are the words that give us the context for understanding what all the words that follow in the definition of contaminants, smoke, vapor, soot or those used in the contamination definition. I think you've answered my question. What you're saying is if I read the definition of contaminant, it means I shouldn't just focus on the word virus in the definition of contamination. Yes, Your Honor. And just two quick points on that. Zurich, when it wrote to us and we refer to Zurich's denial letter at paragraph 114 of our original complaint, they cited the contamination exclusion as the basis to deny coverage. And then in explaining its application, they cited to the contamination definition and the contaminant definition. So we believe it would be reasonable for the ordinary insured who's trying to figure out what is this contamination exclusion to apply to, to read both of these definitions together. But Zurich itself told us to do it. And I've had the benefit of discovering another Zurich case and I've had testimony where Zurich has admitted the two must be read together. So I'm bringing this to you with a little more knowledge, but that is our position as to why those must be read together. And there is an exclusion, express exclusion that Zurich is using other policies for this exact kind of virus contamination. There's a communicable disease exclusion virus and bacteria that Zurich using its other policies, but not here and kept this one, which is on its face, we would argue, ambiguous at the very least. All right. Thank you, counsel, to both sides for your argument in this case. The matter is submitted. We'll take just a very brief break before calling the last two  Thank you, Your Honors. Five, seven minutes.
judges: NGUYEN, HURWITZ, Pregerson